# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>TOM WATSON,<br><br>        Debtor.<br><br><br>BARBARA STALZER, as Chapter 7 Trustee for the Bankruptcy Estate of THOMAS WATSON; and PETRA WATSON,<br><br>        Plaintiffs,<br><br>  v.<br><br>BDO SEIDMAN LLP; RICHARD BROWN; DEUTSCHE BANK AG; DEUTSCHE BANK SECURITIES INC. D/B/A DEUTSCHE BANK ALEX BROWN, a DIVISION of DEUTSCHE BANK SECURITIES, INC.; and DAVID PARSE,<br><br>        Defendants. | Chapter 7<br>No. 02-96223<br><br><br><br><br><br><br><br><br>1:05-cv-1117-WSD |

## <u>ORDER</u>

This matter is before the Court on the Deutsche Bank Defendants' Motion to Compel Arbitration and Stay Proceedings [4, 15].

I.      **BACKGROUND**

On March 9, 2005, Plaintiffs Barbara Stalzer, as Chapter 7 trustee for the bankruptcy estate of Thomas Watson, and Petra Watson ("Plaintiffs") filed their Complaint in this action in the United States Bankruptcy Court for the Northern District of Georgia.  (Compl. [13].)  On May 18, 2005, the Court withdrew the matter from the Bankruptcy Court because the claims asserted in the Complaint fundamentally require the application and interpretation of complex federal statutes, as well as state statutes and common law, and because Title 11 is related only in an ancillary way.  (Order [6].)

Plaintiffs allege Defendants fraudulently counseled Plaintiffs to implement an investment and tax shelter strategy involving investments in foreign exchange digital options contracts (the "Strategy").  (See Compl. ¶ 62.)  Plaintiffs allege Defendants knew the Strategy was not a valid tax avoidance mechanism, made material misrepresentations and omitted making material statements of pertinent facts to Plaintiffs, and that Plaintiffs were injured by Defendants' conduct.  Plaintiffs bring claims against Defendants under the Racketeering Influenced Corrupt Organizations Act ("RICO"), as well as state-law claims for breach of fiduciary duty, fraud, breach of contract, breach of the duty of good faith and fair dealing, negligent

-2-

misrepresentation, professional malpractice, unjust enrichment, and civil

conspiracy.

Plaintiffs assert claims against two subsets of Defendants.  Defendants BDO

Seidman LLP ("BDO Seidman") and Richard Brown, an employee of BDO

Seidman (collectively referred to as the "BDO Defendants"), provide tax, financial

advisory and consulting services to private and publicly traded businesses.

(Compl. ¶¶ 9, 19.)  Defendants Deutsche Bank AG, Deutsche Bank Securities Inc.

and David Parse, an employee of Deutsche Bank AG (collectively referred to as the

"Deutsche Bank Defendants"), offer various investment, financial and related

products and services to consumer and corporate clients worldwide.  (Compl.

¶¶ 12-13.)

Plaintiffs claim all Defendants played interrelated roles in implementing the

Strategy.  Plaintiffs allege:

> Absent Defendants' conspiracy and joint efforts,
> Defendants' scheme would not be successful.  Acting
> jointly, Defendants have and have had greater power,
> have been able to exert greater influence, have been able
> to successfully engage in the activities set forth herein,
> and have and have had greater ability to conceal their
> activities.

(Compl. ¶ 166.)  Plaintiffs further allege each Defendant "has aided and abetted, and has a shared intent to aid and abet each and every other Defendant, in attempting to derive and in actually deriving substantial income and proceeds through the above described pattern of racketeering activity."  (Id. ¶ 178.)

On October 1, 1999, Tom Watson entered into a Consulting Agreement with Defendant BDO Seidman for the provision of accounting and consulting services. (See Consulting Agreement, attached as Ex. A to the Brown Decl., attached as Ex. 5 to the Deutsche Bank Defs.' Mot. to Compel Arbitration.)  The Consulting Agreement contains the following arbitration clause:

> If any dispute, controversy or claim arises in connection with the performance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York, and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association ("AAA"), except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel, and shall take place in the city in which the BDO office providing the relevant Services exists, unless the parties agree to a different locale.

(Consulting Agreement ¶ 8(d).)

On April 20, 2005, the BDO Defendants filed their Motion to Compel Arbitration and Stay this Action [3, 14], claiming they are entitled to compel arbitration pursuant to the arbitration agreement.  On May 24, 2005, the Court entered Plaintiffs' and the BDO Defendants' Stipulation for Entry of Order Granting Motion to Compel Arbitration and Staying Proceedings [9], ordering Plaintiffs and the BDO Defendants to proceed to arbitration before the AAA and staying proceedings in this case pending the arbitration.

On April 20, 2005, the Deutsche Bank Defendants filed their Motion to Compel Arbitration and Stay Proceedings [4, 15].  The Deutsche Bank Defendants argue they are entitled to compel arbitration based on the arbitration agreement between Plaintiffs and Defendant BDO Seidman.  On June 16, 2005, Plaintiffs filed a Response to the Deutsche Bank Defendants' Motion to Compel Arbitration and Stay Proceedings [17], stating they do not believe the Deutsche Bank Defendants are "entitled" to arbitrate, but "mindful that this case is related to a bankruptcy proceeding, have agreed to proceed with a consolidated arbitration as this would be

the most efficient means to resolve this dispute."  (Pls.' Resp. to the Deutsche

Defs.' Mot. to Compel Arbitration at 2 n.1.)[1]

In December 2005, Plaintiffs settled their claims against the BDO

Defendants.  (Pls.' Mot. for Leave to File Opp'n to Deutsche Defs.' Mot. to

Compel Arbitration at 3.)  Because there will not be an arbitration proceeding

between Plaintiffs and the BDO Defendants, Plaintiffs claim they now oppose the

Deutsche Defendants' Motion to Compel Arbitration and Stay Proceedings, and,

on March 2, 2006, requested leave to file a substantive response.  On March 16,

2006, the Court granted Plaintiffs' motion for leave to file a response to the

Deutsche Bank Defendants' motion to compel arbitration, and ordered that

Plaintiffs "shall file their opposition on or before Friday March 24, 2006. . . .  There

will be no extensions."  (Order [29] at 4.)  Despite being granted leave to file a

response, Plaintiffs did not file a brief in opposition to the Deutsche Bank

---

[1] Plaintiffs filed a Motion for Leave to File Sur-Reply to the Deutsche Bank Defendants' Reply to Plaintiffs' Response to the Deutsche Bank Defendants' Motion to Compel Arbitration [19, 20].  In the Sur-Reply, Plaintiffs contend the Deutsche Bank Defendants intend to refuse to consent to AAA arbitration, "but rather will insist on arbitration before the National Association of Securities Dealers."  (Pls.' Sur-Reply at 2 n.1.)  The Court has considered Plaintiffs' Sur-Reply.

Defendants' Motion to Compel Arbitration. The question before the Court is whether the Deutsche Bank Defendants can compel Plaintiffs to arbitrate their claims.

## II.   <u>DISCUSSION</u>

The Deutsche Bank Defendants, non-signatories to the arbitration agreement between BDO Seidman and Tom Watson, claim they are entitled to enforce the agreement to arbitrate against Plaintiffs under an equitable estoppel theory because Plaintiffs allege a course of interdependent conduct between the Deutsche Bank Defendants and BDO Seidman.

The issue presented here is whether a non-signatory to an arbitration agreement may compel arbitration with a signatory.[2] As explained in <u>MS Dealer Service Corp. v. Franklin</u>, 177 F.3d 942, 947 (11th Cir. 1999), in view of the "healthy regard for the federal policy favoring arbitrations," this Circuit recognizes

_____

[2] That Plaintiffs settled their claims against the Defendant which signed the arbitration agreement is not material. In <u>MS Dealer Service Corp. v. Franklin</u>, 177 F.3d 942 (11th Cir. 1999), the Eleventh Circuit found plaintiff was equitably estopped from avoiding arbitration with a non-signatory defendant, despite the signatory defendant already having obtained a favorable ruling from the arbitrator and the state court having dismissed with prejudice plaintiff's claims against the signatory defendant.

several situations in which a non-signatory can compel arbitration, including under a theory of equitable estoppel.

In <u>MS Dealer Service Corp.</u>, plaintiff brought suit against two defendants, claiming defendants improperly conspired to defraud plaintiff in connection with her purchase of a service contract, which contained an arbitration clause.  The defendant which did not sign the service contract moved to compel plaintiff to arbitrate her claims against it.  The Court found that equitable estoppel permits a non-signatory to compel arbitration in two different circumstances.  First, equitable estoppel applies when a plaintiff must rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the non-signatory.  "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate."  <u>MS Dealer Serv. Corp.</u>, 177 F.3d at 947.  Second, equitable estoppel applies when a plaintiff raises allegations of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.  Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively

thwarted." Id. (quotation and citation omitted).  The Court found the non-signatory

defendant could compel arbitration because each of plaintiff's claims "makes

reference to and presumes the existence of" the contract which contained the

arbitration provision, and, moreover, plaintiff's claims against the signatory and

non-signatory "are based on the same facts and are inherently inseparable." Id. at

947-48.  "MS Dealer is not a rigid test, and each case turns on its facts." In re

Humana, Inc. Managed Care Litig., 285 F.3d 971, 976 (11th Cir. 2002).

It is not clear whether the two circumstances giving rise to equitable estoppel

described in MS Dealer Service Corp. are both required, whether dependence on

the contract is required, or whether the two circumstances independently permit a

non-signatory to compel arbitration.  MS Dealer Service Corp. indicates that either

intertwined behavior or dependence on the contract is sufficient to invoke equitable

estoppel.  The Court in In re Humana, Inc. indicated that dependence on the

contract is necessary, even if intertwined behavior is present.  285 F.3d at 976

("The plaintiff's actual dependence on the underlying contract in making out the

claim against the nonsignatory defendant is therefore always the *sine qua non* of an

appropriate situation for applying equitable estoppel.").  In Blinco v. Green Tree

Servicing, LLC, 400 F.3d 1308 (11th Cir. 2005), the Court held that equitable

estoppel allowed a non-signatory to enforce an arbitration agreement because

Plaintiff's claim depended on the contract.  The Court did not address intertwined

behavior.  This Court, however, does not have to resolve any potential conflict in

the Circuit because both of the circumstances giving rise to equitable estoppel exist

here.

Plaintiffs entered the arbitration agreement with BDO Seidman in connection

with implementation of the Strategy.[3]  Plaintiffs allege intertwined and collusive

behavior among the Deutsche Bank Defendants and BDO Defendants, specifically

alleging that "[a]cting jointly, Defendants have and have had greater power," and

that each Defendant "has aided and abetted, and has a shared intent to aid and abet

each and every other Defendant, in attempting to derive and in actually deriving

substantial income and proceeds through the above described pattern of

racketeering activity."  (Compl. ¶¶ 166, 179.)  Plaintiffs also allege the Deutsche

Bank Defendants and BDO Defendants all participated in a RICO enterprise.  (Id. ¶

_____

[3]  Plaintiff Barbara Stalzer, as Chapter 7 trustee for the bankruptcy estate of
Thomas Watson, is bound to the arbitration provision to the same extent Plaintiff
Thomas Watson is bound.  Plaintiff Petra Watson is also bound to the same extent
Plaintiff Thomas Watson is bound.  See Blinco, 400 F.3d at 1312 ("Equitable
estoppel precludes a party from claiming the benefits of a contract while
simultaneously attempting to avoid the burden the contract imposes.").

124.)  Having reviewed Plaintiffs' pleadings, there is no question Plaintiffs allege

concerted misconduct by the Deutsche Bank Defendants and BDO Defendants.

Plaintiffs' claims also rely upon the existence of the arbitration agreement --

the second circumstance giving rise to equitable estoppel.[4]  "When each of a

signatory's claims against a nonsignatory makes reference to or presumes the

existence of the written agreement, the signatory's claims arise out of and relate

directly to the written agreement, and arbitration is appropriate."  MS Dealer Serv.

Corp., 177 F.3d at 947 (quotation and citation omitted).

Here, Plaintiffs' claims are fundamentally related to the Consulting

Agreement which contains the arbitration provision.  Plaintiffs allege all Defendants

conspired and acted jointly to "market and implement the fraudulent and illegal . . .

Strategy," and that Defendants "acted in the respective roles . . . according to a

predetermined and commonly understood and accepted plan of action . . ., all for

the purposes of obtaining professional fees from consumers, including the

Plaintiffs."  (Compl. ¶¶ 230-31.)  Plaintiffs further allege that implementation of the

---

[4]  A claim for breach of the contract containing the arbitration provision is
not required to establish equitable estoppel.  See MS Dealer Serv. Corp., 177 F.3d
at 948.

Strategy depended on the BDO Defendants' introduction of the Strategy to Plaintiffs.  (Id. ¶ 55.)  In fact, Plaintiffs seek to recover in this action fees paid under the Consulting Agreement which contains the arbitration provision.  (Compl., Prayer for Relief ("Defendants are liable to Plaintiffs . . . for all professional fees, costs, and expenses incurred by Plaintiffs to engage in the Strategy . . . .").)  The Consulting Agreement with BDO Seidman is necessarily a part of each and all of Plaintiffs' claims.  Because both circumstances giving rise to equitable estoppel are present here, the Deutsche Bank Defendants can compel arbitration.  Accord Reddam v. KPMG LLP, No. 04-1227 (C.D. Cal. Dec. 15, 2004) (applying equitable estoppel standard from MS Dealer Service Corp. to similar facts and finding non-signatory defendants can compel arbitration of claims against them); Hansen v. KPMG LLP, No. 04-10525 (C.D. Cal. Mar. 29, 2005) (same).

Because the Court finds Plaintiffs must arbitrate their claims against the Deutsche Bank Defendants, the Court stays this action pursuant to 9 U.S.C. § 3 pending completion of arbitration.

## III.   CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the Deutsche Bank Defendants' Motion to Compel Arbitration and Stay Proceedings [4, 15] is **GRANTED**, and this action shall be arbitrated according to the terms of the arbitration agreement.

**IT IS FURTHER ORDERED** that this action is **STAYED** pending completion of arbitration.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Sur-Reply [19, 20] is **GRANTED**.

**SO ORDERED**, this 27th day of March, 2006.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE